UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| BRAZEIK EDWARDS,<br>Plaintiffs,<br><br>v.<br><br>ALEXANDER COUNTY HOUSING<br>AUTHORITY, JAMES WILSON,<br>THOMAS UPCHURCH, JOANNE<br>PINK, and MARTHA FRANKLIN,<br>an Illinois municipal corporation, And<br>HOUSING AND URBAN DEVELOPMENT,<br>BEN CARSON, a United States Administrative<br>Agency,<br>Defendants. | Case No. -cv- 19-879-JPG-RJD<br><br>**FILED**<br>AUG 1 2 2019<br>CLERK, U.S. DISTRICT COURT<br>SOUTHERN DISTRICT OF ILLINOIS<br>BENTON OFFICE<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### INTRODUCTION

1. This lawsuit is brought on behalf of Brazeik Edwards, a former resident of the Alexander County Housing Authority ("ACHA") to remedy the effects of rampant race discrimination, retaliation, and family status discrimination, as well as damages from living in deplorable housing conditions. For years, ACHA, Housing and Urban Development (HUD), and its agents discriminated against former residents of its McBride and Elmwood family housing developments based on race and familial status, in violation of the Fair Housing Act, 42 U.S.C. § 3604, Title VI of the Civil Rights Act of 1964, and the Illinois Civil Rights Act of 2003. ACHA, while HUD oversaw, allowed the conditions of both housing developments to denigrate to the extent that tenants were living in roach and rat-infested squalor while ACHA administrators galivanted around the country on trips paid for by HUD and the Housing Authority in violation of federal law.

2. ACHA engaged in a pattern and practice of segregating its public housing developments by race, even though the United States Department of Justice previously found that it engaged in the same conduct more than 40 years ago.

1

3. ACHA, while under HUD oversight and with full knowledge, also engaged in a pattern and practice of not maintaining the Elmwood and McBride developments – which were occupied almost exclusively by African-American tenants – until they deteriorated to the point of becoming uninhabitable and having to be ultimately demolished. Both developments are now in the process of being demolished and may have been completely demolished by the time of filing of this complaint.

4. McBride and Elmwood apartments, located in Cairo, Illinois, were infested with mice, rats, roaches, and bedbugs. For years, Elmwood and McBride residents made requests for repairs, and ACHA ignored them or repaired them in a substandard manner. Both developments also had long suffered from serious security problems. Despite these safety issues, ACHA, under the watchful eye of HUD, failed to provide security guards or cameras to protect tenants or visitors of these housing projects.

5. Meanwhile, ACHA adequately maintained its Connell Smith development in satisfactory condition and provided both security cameras and security guards. Until very recently, approximately half of Connell Smith residents were white, and almost all were over the age of fifty.

6. ACHA for many years refused to place families with children in certain public housing developments, such as Connell Smith, in order to prevent African American families from living in majority white public housing developments.

7. Conditions at Elmwood and McBride Housing ultimately lead to physical illness and injury to some residents including children who lived in the housing developments and were diagnosed with lead poisoning, asthma, and other disorders caused by the conditions.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (color of state law), 3613 (Fair Housing Act), and 1367 (supplemental jurisdiction).

9. Plaintiff seeks declaratory and injunctive relief against the ACHA and HUD, pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because ACHA and HUD violated federal law in this judicial district.

**PARTIES**

11. Brazeik Edwards is a 25-year-old African-American woman who lived in ACHA's Elmwood development since her birth in 1997. She lived with her parents in a three-bedroom unit until she moved to her own two-bedroom unit in Elmwood in 2016 before being forced to move due to the closing of the development.

12. Defendant Alexander County Housing Authority is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 310 Ill. Comp. Stat. 10/1 *et seq.* ACHA is a public housing agency within the meaning of 42 U.S.C. § 1437. ACHA is a recipient of federal financial assistance and is considered to be a program or activity with operations subject to Title VI. 24 C.F.R. § 1.2(f). ACHA operates 478 public housing units within Alexander County.

13. Defendant James Wilson was ACHA's Executive Director from 1989 to 2013. He continued working for ACHA on a part-time consultant basis from 2013 to 2015. He returned to the Executive Director position for an 11-day period in early 2015.

14. Defendant Martha Franklin worked as ACHA's Executive Director from April 2013 to January 2015. She has worked as ACHA's Finance Director from 2015 to the present.

15. Defendant Thomas Upchurch worked as ACHA's Executive Director from approximately March 2015 to October 2015.

16. Defendant Joanne Pink worked as ACHA's Executive Director from October 2015 to January 2016.

17. Housing and Urban Development is a United States administrative agency, created under the United States Constitution, Article II. HUD is an agency that is a Cabinet office under the Office of the President of the United States empowered with oversight authority over housing policy and oversight over the thousands of Housing Authorities throughout the United States, including Alexander County Housing Authority.

18. In February 2016, the U.S. Department of Housing and Urban Development

("HUD") took over the operations of ACHA pursuant to 24 C.F.R. § 907.

19. Defendant Benjamin Carson is the Director of HUD and has been so since March 2017.

## FACTUAL ALLEGATIONS
## HISTORY OF RACE DISCRIMINATON AT ACHA

20. ACHA has had a long history of discriminating against African American residents based on their race.

21. In 1974, the U.S. Department of Justice filed a lawsuit against ACHA for intentionally segregating its two main public housing complexes by race. At the time, Elmwood was reserved for white residents, and Pyramid Courts (later McBride) was reserved for African-American residents.

22. The lawsuit was eventually settled, and ACHA agreed to stop segregating its housing based on race. ACHA agreed to prioritize occupancy such that Pyramid Courts would have 71 white residents (out of 237), and Elmwood would have 39 black tenants (out of 159).

### Defendants Segregated Residents on the Basis of Race
### And Perpetuated Racial Segregation

23. ACHA returned to its discriminatory past by engaging in a pattern and practice of segregating residents on the basis of race. Approximately 97% of the residents living in McBride and Elmwood were African-American prior to its closing, while white households predominated in the developments of Meadows, Johnson, Sunset Terrace, King, and Connell Smith. This was true even though African-Americans made up just 36% of the residents within Alexander County, ACHA's service area.

### Defendants Failed to Maintain McBride and Elmwood,
### Forcing Residents to Live in Squalor

24. ACHA, through its Executive Directors, have engaged in a pattern and practice of allowing the McBride and Elmwood developments to deteriorate, while preserving and maintaining the Connell Smith development in satisfactory condition. Defendants have engaged in a pattern and practice of allowing the housing conditions at McBride and Elmwood to deteriorate because of the residents' race, African American.

4

25. For several years, units located at McBride and Elmwood – including those occupied by Plaintiffs – were infested with roaches, rats, mice, and bedbugs. Despite residents' complaints, ACHA did little to nothing to address the problem and HUD in its oversight capacity did not take sufficient measures to ensure that such issues were remedied despite having full knowledge of the issue.

26. Many of the units at McBride and Elmwood had mold as well as plumbing and electrical deficiencies. Defendants were aware of these problems for years, yet they failed to meaningfully address them.

27. There was significant gun violence and other crime at McBride and Elmwood, yet ACHA did very little to increase security at these developments. At the same time, ACHA devoted security resources to Connell Smith and Shoemaker, where there is far less crime and no gun violence.

28. While ACHA was under the control of Defendants Wilson and Franklin, ACHA wasted resources on excessive employee retirement bonuses, unnecessary post retirement contracts, and unjustified travel expenses. These unjustified expenses are chronicled in an August 23, 2015 article entitled, "Chaos in Cairo" published by the newspaper, *The Southern Illinoisan*.

29. In part because of these unjustified payouts to current and former employees, ACHA was unable to address the serious pest and rodent infestations or other conditions problems at McBride and Elmwood.

30. Wilson, Upchurch, Pink, and Franklin all worked as ACHA Executive Director during relevant time periods. None of them took action to meaningfully alleviate the pest and rodent problems at McBride and Elmwood, nor did they take action to meaningfully alleviate the crime, mold, and plumbing problems.

### HUD Finds That ACHA Discriminated Against Residents Based On Race

31. On September 30, 2014, HUD issued a letter to ACHA finding that it had violated Title VI of the Civil Rights Act ("Title VI"), 42 U.S.C. § 2000d. *See* Exhibit A (HUD letter to ACHA). HUD determined that ACHA violated Title VI by engaging in intentional racial

segregation in McBride and Elmwood. *Id.*

32. HUD also found that ACHA was well aware of the security and conditions issues at McBride and Elmwood, but failed to provide adequate maintenance and security resources to either development.

33. HUD concluded that ACHA's segregation of the developments by race and its corresponding failure to maintain McBride and Elmwood resulted in an adverse impact on African American families and residents.

34. Despite these findings, ACHA, continued their practice of failing to remedy issues in the housing units and continued the practice of discrimination.

### ACHA's Enforces A Rule That Discriminates Against Families with Children

35. All of ACHA's 478 units were designated as family public housing.

36. However, for at least the past ten years, ACHA, through its Executive Directors, have implemented a rule prohibiting families with children from living in Connell Smith, Shoemaker, and several of the scattered site developments and improperly reserved them for seniors and people with disabilities.

37. Neither Connell Smith nor Shoemaker nor the scattered-site programs satisfy the Fair Housing Act's definition of "housing for older persons" as defined at 42 U.S.C. § 3607(b)(2).

38. ACHA never sought to re-designate Connell Smith, Shoemaker, or the scattered site programs under PIH Notice 2005-2 prior to implementing this rule barring families with minor children and designating certain buildings as senior/disabled housing.

39. Wilson, Upchurch, Pink, and Franklin worked as ACHA Executive Director during relevant time periods. They all enforced the rule prohibiting families with children from living in Connell Smith, Shoemaker and the scattered site developments.

### INJURY TO PLAINTIFF

40. Defendants' actions threaten Plaintiff with imminent and irreparable injury, including deteriorating housing, crime, discrimination, segregation, and the overpayment of rents.

41. Defendants' actions have the purpose and effect of limiting housing opportunities for racial minorities and families with children.

42. Defendants' actions disproportionately denied housing opportunities in Alexander County to racial minorities and families with children.

43. African Americans disproportionately resided in ACHA's public housing. Almost 80% of ACHA's units contained a head of household who is African American.

44. Through their actions described above, Defendants acted negligently, intentionally, maliciously, and with willful, malicious, wanton, and reckless disregard for federal and state fair housing and non-discrimination laws.

45. Defendants' actions caused and created a severe hardship for plaintiff.

## LEGAL CLAIMS

### COUNT I – FAIR HOUSING ACT CLAIM
### DISPARATE TREATMENT BASED ON RACE

46. Plaintiff re-alleges paragraphs 1 to 45 of this Complaint and incorporate them herein.

47. Defendants, through their actions and the actions of their agents, intentionally discriminated against African Americans living at McBride and Elmwood based on their race, in violation of 42 U.S.C. § 3604.

### COUNT II – FAIR HOUSING ACT CLAIM
### PERPETUATION OF RACIAL SEGREGATION

48. Plaintiff re-alleges paragraphs 1 to 45 of this Complaint and incorporate them herein.

49. Defendants' actions as described above perpetrate segregation on the basis of race in violation of the Fair Housing Act § 3604.

### COUNT III – FAIR HOUSING ACT CLAIM
### FAILURE TO AFFIRMATIVELY FURTHER FAIR HOUSING

50. Plaintiff re-alleges paragraphs 1 to 46 of this Complaint and incorporate them herein.

51. ACHA is a "person" within the meaning of 42 U.S.C. § 1983, and its actions described herein were taken under color of state law.

52. By engaging in the actions and omissions described and failing to take meaningful action to remedy these egregious civil rights violations, ACHA and HUD violated its duty to affirmatively further fair housing, in violation of 42 U.S.C. § 3608(e)(5). By breaching its duty to affirmatively further fair housing, ACHA and HUD deprived Plaintiff of rights secured to him by federal law, in violation of 42 U.S.C. § 1983.

### COUNT IV – TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

53. Plaintiff re-alleges paragraphs 1 to 45 of this Complaint and incorporate them herein.

54. ACHA, through its actions and the actions of its agents, are liable for the violation of Plaintiff's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d *et seq.*, under which, "[n]o person in the United states shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance."

### COUNT V – ILLINOIS CIVIL RIGHTS ACT OF 2003 CLAIM

55. Plaintiff re-alleges paragraphs 1 to 45 of this Complaint and incorporate them herein.

56. ACHA and HUD, through their actions and the actions of agents, are liable for the violation of Plaintiff's rights under the Illinois Civil Rights Act of 2003, 740 Ill. Comp. Stat. Ann. 23/5, under which, "[n]o unit of State, county, or local government in Illinois shall: (1) exclude a person form participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender."

### COUNT VI – FAIR HOUSING ACT CLAIM
### DISPARATE TREATMENT BASED ON FAMILIAL STATUS

57. Plaintiff re-alleges paragraphs 1 to 45 of this Complaint and incorporate them herein.

58. Defendants, through their actions and the actions of their agents, intentionally discriminated against families with minor children, violation of 42 U.S.C. § 3604.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that the acts and omissions of the Defendants, as set forth above, violate the

Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq.*, the Illinois Civil Rights Act of 2003, and 740 Ill. Comp. Stat. Ann. 23/5;

    b. Declare the acts and omissions of the Defendants, as set forth above, violate ACHA's residential public housing lease;

    c. Award monetary relief in the amount of compensatory damages, punitive damages, and prejudgment interest in an amount to be proven at trial;

    d. Enter an order requiring Defendants to pay Plaintiff's reasonable costs and attorneys' fees for the prosecution of this action, pursuant to 42 U.S.C. § 3613(c)(2), 740 Ill. Comp. Stat. Ann. 23/5(c), and 42 U.S.C. § 1988; and

    e. Grant Plaintiff such further relief as this Court deems just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues as to which a jury trial is available.

DATED: July 18, 2019

By: _____
Brazeik Edwards
*Pro Se*
7106 Apple Lane
Apt. A
Carbondale, Illinois 62902