IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRAZEIK EDWARDS,<br>KOREE SIMELTON,<br>KENNY WAYNE SIMELTON,<br>ERIC OLIVER,<br>SHAMEKA NELSON, and<br>JAMIKA C. SUEING,<br>Plaintiffs, | Case No. 19–CV–00879–JPG |
| v. | CONSOLIDATED CASE |
| ALEXANDER COUNTY HOUSING<br>AUTHORITY,<br>JAMES WILSON,<br>THOMAS UPCHURCH,<br>JOANNE PINK,<br>MARTHA FRANKLIN,<br>HOUSING AND URBAN DEVELOPMENT,<br>and<br>BEN CARSON,<br>Defendants. | No. 19–CV–00880–JPG<br>No. 19–CV–00881–JPG<br>No. 19–CV–01116–JPG<br>No. 19–CV–01253–JPG<br>No. 19–CV–01328–JPG |

## **MEMORANDUM OPINION AND ORDER**

This is a consolidated civil-rights case. Before the Court are (1) Defendants Housing and Urban Development and Ben Carson's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim, (ECF No. 29) [hereinafter "the Government's Motion"]; and (2) Defendants Alexander County Housing Authority, James Wilson, Thomas Upchurch, Joanne Pink, and Martha Franklin's Motion to Dismiss, (ECF No. 50) [hereinafter "the Housing Authority's Motion"]. The plaintiffs, pro se, did not respond. For the reasons below, the Court:

- **GRANTS** the Government's Motion and **DISMISSES** Counts I, II, III, V, and VI of each complaint <u>as to Defendants HUD and Ben Carson</u> **WITH PREJUDICE**; and

- **GRANTS IN PART AND DENIES IN PART** the Housing Authority's Motion and **DISMISSES** Counts I, II, III, V, and VI of Plaintiff Jamika Sueing's complaint <u>in their entirety</u> **WITH PREJUDICE**.

I. **PROCEDURAL & FACTUAL HISTORY**

The plaintiffs are former residents of the McBride and Elmwood housing developments in Cairo, Illinois:

- "Brazeik Edwards is a 25-year-old African-American woman who lived in [the] Elmwood development since her birth in 1997. She lived with her parents in a three-bedroom unit until she moved to her own two-bedroom unit in Elmwood in 2016 before being forced to move due to the closing of the development." (Edwards Compl. 3, ECF No. 2).

- "Koree Simelton is a 23-year-old African-American woman who has lived in [the] Elmwood development since birth in 1996. She lived with her parents in a three-bedroom unit until being forced to move from the development because of the closing of the housing due to the deplorable conditions." (K. Simelton Compl. 3, ECF No. 2, Case No. 19-CV-00880-JPG).

- "Kenny Wayne Simelton is a 56-year-old African-American man who lived in [the] Elmwood development for approximately 20 years and lived in the McBride Housing Project for 10 years previously. He lived in a three-bedroom unit with his wife, Kimberly, and children Koree and Brazeik Edwards." (K.W. Simelton Compl. 3, ECF No. 2, Case No. 19-CV-00881-JPG).

- "Eric Oliver is a 53-year-old African-American man who lived in [the] Elmwood development for approximately 5 years. He lived in a one-bedroom unit by himself." (Oliver Compl. 3, ECF No. 2, Case No. 19-CV-01116-JPG).

- "Shameka Nelson stands in as representative for his minor children ages 8 and 12 lived in [the] Elmwood development until 2017. The children lived with their parents in a six-bedroom unit until being forced to move from the development because of the closing of the housing due to the deplorable conditions." (Nelson Compl. 3, ECF No. 2, Case No. 19-CV-01253-JPG).

- "Jamika Sueing lived in [the] McBride development from 2010–2015 and Elmwood housing development from 2002–2008. She lived with her children in a six-bedroom unit in McBride and a three-bedroom unit at Elmwood Housing until being forced to move from the development because of the abhorrent conditions." (Sueing Compl. 3, ECF No. 1, Case No. 19-CV-01328-JPG).[1]

---

[1] Aside from their captions and the statements just quoted, the plaintiffs' complaints are the same. The Court therefore consolidated them, the lead case being this one.

The developments were maintained by the Alexander County Housing Authority ("the Housing Authority"), a public-housing agency under the oversight of the U.S. Department of Housing and Urban Development ("HUD"). (Edwards Compl. at 1). The Housing Authority's executive director was James Wilson from 1989 to 2013, Martha Franklin from 2013 to 2015, Thomas Upchurch in 2015, and Joanne Pink from 2015 to 2016. (*Id.* at 3). Ben Carson is HUD's director. (*Id.* at 4).

The plaintiffs allege that the Housing Authority "engaged in a pattern and practice of segregating its public-housing developments by race, even though the United States Department of Justice previously found that it engaged in the same conduct more than 40 years ago." (*See id.* at 1). "For several years, units located at McBride and Elmwood—including those occupied by Plaintiffs—were infested with roaches, rats, mice, and bedbugs." (*Id.* at 5). "Conditions at Elmwood and McBride Housing ultimately [led] to physical illness and injury to some residents including children who lived in the housing developments and were diagnosed with lead poisoning, asthma, and other disorders caused by the conditions." (*Id.* at 2). There was also "significant gun violence and other crime at McBride and Elmwood, yet [the Housing Authority] did very little to increase security at these developments." (*See id.* at 5). "Approximately 97% of the residents living in McBride and Elmwood were" Black. (*See id.* at 4). The apartments provided to Whites, on the other hand, were "in satisfactory condition" and came with "both security cameras and security guards." (*See id.* at 2). This all occurred "under the watchful eye of HUD." (*See id.*).

In separate complaints, the plaintiffs contend that the defendants' actions (1) threaten them "with imminent and irreparable injury, including deteriorating housing, crime, discrimination, segregation, and the overpayment of rents"; (2) limit "housing opportunities for racial minorities

and families with children"; (3) "disproportionately denied housing opportunities in Alexander County to racial minorities and families with children"; and "caused and created a severe hardship for the plaintiff[s]." (*See id.* at 6–7). They present these claims for declaratory and monetary relief:

- Count I: "Disparate Treatment Based on Race Claim" under the Fair Housing Act against all defendants;

- Count II: "Perpetuation of Racial Segregation Claim" under the Fair Housing Act against all defendants;

- Count III: "Failure to Affirmatively Further Fair Housing Claim" under the Fair Housing Act against the Housing Authority and HUD;

- Count IV: "Racial Discrimination Claim" under Title VI of the Civil Rights Act of 1964 against the Housing Authority;

- Count V: "Racial Discrimination Claim" under the Illinois Civil Rights Act of 2003 against the Housing Authority and HUD; and

- Count VI: "Disparate Treatment Based on Familial Status Claim" under the Fair Housing Act against all defendants.

(*See id.* at 7–9).

The defendants moved for dismissal. Asserting *sovereign immunity*, Defendants HUD and Ben Carson seeks dismissal of all the complaints under Federal Rule of Civil Procedure 12(b)(1). Defendants Alexander County Housing Authority, James Wilson, Thomas Upchurch, Joanne Pink, and Martha Franklin seek dismissal of Plaintiff Jamika Sueing's complaint under Rule 12(b)(6) on statutes-of-limitations grounds.

## II.   LAW & ANALYSIS

Because neither the Fair Housing Act, Title VI, nor the Illinois Civil Rights Act contains an unequivocal waiver of the Federal Government's sovereign immunity, Defendants HUD and Ben Carson are dismissed from the case. Additionally, Plaintiff Jamika Sueing's claims under the

Fair Housing Act and the Illinois Civil Rights Act are untimely: Counts I, II, III, V, and VI of her complaint are dismissed in their entirety.

### A. The Government's Motion

Defendants may seek dismissal of a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "It always must be remembered that the federal courts are courts of limited jurisdiction and can only adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder." Arthur R. Miller et al., 5B Federal Practice & Procedure § 1350 (3d ed. 2020).

As expounded on below, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (internal citations omitted). Although the Seventh Circuit has resisted referring to this question of *sovereign immunity* as "a jurisdictional one," "it is nevertheless a 'threshold ground[] for denying audience to a case on the merits' " and is properly presented in a motion under Rule 12(b)(1). *See Meyers v. Oneida Tribe of Indians of Wisc.*, 836 F.3d 818, 822–23 (7th Cir. 2016). "In all cases, the party asserting federal jurisdiction has the burden of proof to show that jurisdiction is proper." *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012).

"The generation that designed and ratified our federal system considered immunity from private suits central to sovereign dignity. When the Constitution was ratified, it was well established in English law that the Crown could not be sued without consent in its own courts." *Alden v. Maine*, 527 U.S. 706, 715 (1999). "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*." The Federalist No. 81, at 399 (Alexander Hamilton) (emphasis in original) (Coventry House Publishing 2015).

This immunity from suit extends not only to the individual States but also to the Federal Government itself. *See Cohens v. Virginia*, 19 U.S. 264, 411–12 (1821) ("The universally received opinion, that no suit can be commenced or prosecuted against the United States; that the judiciary does not authorize such suits."); *United States v. Navajo Nation*, 556 U.S. 287, 289 (2009) ("The Federal Government cannot be sued without its consent."). Thus, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted).

For all that, the Government contends that it is immune from the plaintiffs' suit. The Court agrees.[2]

<u>Fair Housing Act Claim</u>. The Fair Housing Act allows aggrieved parties to "commence a civil action in an appropriate United States district court . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach." 42 U.S.C. § 3613(a)(1)(A). "[I]f the court finds that a discriminatory housing practice has occurred . . ., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs. The United States shall be liable for such fees and costs to the same extent as a private person." *Id.* § 3613(c).

Courts that have interpreted the quoted section above have concluded that sovereign immunity bars suits for monetary relief against HUD. *E.g.*, *Gregory v. S.C. Dep't of Transp.*, 289 F. Supp. 2d 721, 726 (D.S.C. 2003), *aff'd*, 114 Fed. App'x 87 (4th Cir. 2004) ("The language is ambiguous at best; therefore, sovereign immunity is still intact for HUD in this context."); *Peet v. Sidney*, No. 17-cv-1870 (ECT/TNL), 2019 WL 542939, at *3 (D. Minn. Jan. 24, 2019) ("There

---

[2] The Court recognizes that the Federal Government would not be protected by sovereign immunity for *injunctive* relief under the Administrative Procedure Act. *See* 5 U.S.C. § 702. Given that the McBride and Elmwood developments were demolished, however, injunctive relief is no longer feasible (nor is it requested).

is . . . no such waiver for claims for monetary relief under the [Fair Housing Act]."); *Super v. J. D'Amelia & Assocs., LLC*, No. 3:09cv831 (SRU), 2010 WL 3926887, at *12 (D. Conn. Sept. 30, 2010) ("There is no congressional abrogation of sovereign immunity in the [Fair Housing Act]."). Because the statute cannot, by its plain terms, be considered an unequivocal abrogation of the Government's sovereign immunity, this Court holds the same.

*Title VI*. Like the Fair Housing Act, Title VI does not abrogate the Federal Government's sovereign immunity. *See Drayden v. Needville Indep. Sch. Dist.*, 642 F.2d 129, 133 n.6 (5th Cir. 1981), *abrogated on other grounds*, *Franklin v. Gwinnet Cty. Pub. Schs.*, 503 U.S. 60, 64 (1992) ("There has been no statutory waiver of sovereign immunity in Title VI cases.").

*Illinois Civil Rights Act*. The Illinois Civil Rights Act also does not permit suits against the Federal Government. *See* 740 Ill. Comp. Stat. § 23/5(a); *Neuman v. United States*, No. 07-CV-0362-MJR, 2007 WL 3407442, at *3 (S.D. Ill. Nov. 15, 2007) ("That act provides a cause of action against only three potential parties: the State of Illinois, its counties, and its local governments. Thus, [the plaintiff] has failed to show that it could raise a claim against the United States under that statute, and as a result, has failed to show that the Government has waived its sovereign immunity.").

Because the Federal Government is protected by sovereign immunity, the Court **GRANTS** the Government's Motion and **DISMISSES** the plaintiffs' claims as to HUD and Ben Carson (Counts I, II, III, V, and VI) **WITH PREJUDICE**.

### B. Alexander County's Motion

Defendants may also seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) . . . is appropriate when a successful affirmative defense or other bar to relief on the claim is conclusively established

on the face of the complaint. This includes the . . . statute of limitations . . . ." 2 Moore's Federal Practice–Civil § 12.34(4)(b) (3d ed. 2020).

"Statutes of limitations . . . are intended to keep stale claims out of the courts." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). They "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). "As a general matter, a statute of limitations begins to run when the cause of action 'accrues'—that is, when 'the plaintiff can file suit and obtain relief.' " *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105 (2013). This is typically "when the injury occurred or was discovered." *Statute of Limitations*, Black's Law Dictionary (11th ed. 2019).

"[B]ecause complaints do not have to anticipate affirmative defenses to survive a motion to dismiss," district courts may only dismiss a complaint on statute-of-limitations grounds when "the allegations in the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). This is presumably why the defendants only seek dismissal of Sueing's complaint—the other defendants either fail to state when they moved out of the housing developments or do so ambiguously. According to Sueing's complaint, however, she moved out of the Elmwood development in 2015. Her claims, therefore, began accruing then—the day she last suffered an injury.

<u>Fair Housing Act</u>. "The Fair Housing Act requires that a suit be filed within two years 'after the occurrence or termination of an alleged discriminatory housing practice.' " *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1996) (quoting 42 U.S.C. § 3613(a)(1)(A)). Sueing's

Fair Housing Act claim began accruing in 2015, so she had to sue by 2017. Because she did not sue until 2019, her Fair Housing Act claim is time-barred.

*Title VI*. The statute of limitations applicable to claims under Title VI of the Civil Rights Act of 1964 is less clear. Title VI itself does not supply one. In *Beard v. Robinson*, however, the Seventh Circuit held that "the Illinois **five-year** statute of limitations applies to statutory claims brought under the Civil Rights Acts." 563 F.2d 331, 338 (7th Cir. 1977) (emphasis added). The defendants, on the other hand, assert that the statute of limitations is two years, pointing to the Seventh Circuit's decision in *Campbell v. Forest Preserve District*, 752 F.3d 665, 667 (7th Cir. 2014). But that case had nothing to do with Title VI. Rather, on the page cited by the defendants, the court clarified that claims brought under 42 U.S.C. §§ 1981 and 1983 are "governed by the forum state's personal-injury statute of limitations"—**two years** in Illinois. *Id.* (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62 (1987) (§ 1981 claims); *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985) (§ 1983 claims)). The defendants' reading of *Campbell*—extending the two-year statute of limitations to Title VI claims—is overbroad given that the Seventh Circuit has never overruled *Beard*. The Court agrees instead with Judge Bua of the Northern District of Illinois:

> Defendants maintain that the two-year statute of limitations for personal-injury actions should apply to Lewis' Title VI claim. Essentially, defendants ask this court to extend the Supreme Court's rulings in *Wilson* and *Goodman* to the context of Title VI. The Court declines to do so. In *Beard v. Robinson*, the Seventh Circuit established a five-year statute of limitations for all actions brought under the Civil Rights Acts. Until the Supreme Court defines a limitations period for Title VI actions, or until the Seventh Circuit overturns *Beard*, the statute of limitations adopted by *Beard* shall continue to govern Title VI claims presented to this court.

*Lewis v. Russe*, 713 F. Supp. 1127, 1232 (N.D. Ill. 1989) (internal citations omitted); *accord Allen v. Bd. of Governors of State Colleges & Univs.*, No. 93 C 380, 1993 WL 69674, at *2 (N.D. Ill.

1993). So because Sueing had five years from 2015—until 2020—to file her Title VI claim, it was brought within the statute of limitations.

*Illinois Civil Rights Act*. Claims under the Illinois Civil Rights Act are subject to a two-year statute of limitations. 740 Ill. Comp. Stat. § 23/5(b). Like the Fair Housing Act claim, therefore, Sueing's claim under the Illinois Civil Rights Act is untimely.

Because Sueing's Complaint is partly time-barred, the Court **GRANTS IN PART AND DENIES IN PART** the Housing Authority's Motion and **DISMISSES** Counts I, II, III, V, and VI of Plaintiff Jamika Sueing's complaint in their entirety **WITH PREJUDICE**.

### III. CONCLUSION

The Court:

- **GRANTS** the Government's Motion and **DISMISSES** Counts I, II, III, V, and VI of each complaint as to Defendants HUD and Ben Carson **WITH PREJUDICE**; and

- **GRANTS IN PART AND DENIES IN PART** the Housing Authority's Motion and **DISMISSES** Counts I, II, III, V, and VI of Plaintiff Jamika Sueing's complaint in their entirety **WITH PREJUDICE**.

**IT IS SO ORDERED.**

**Dated: Tuesday, January 12, 2021**

                **S/J. Phil Gilbert**
                **J. PHIL GILBERT**
                **UNITED STATES DISTRICT JUDGE**